UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                               CASE NO. 8:24-cr-114-MSS-SPF

TYLER DEON JACOB                                 18 U.S.C. § 1349
                                                 18 U.S.C. § 1344 and 2
                                                 18 U.S.C. § 1028A
                                                 18 U.S.C. §§ 922(g)(1)
                                                 18 U.S.C. § 1519
                                                 18 U.S.C. § 1512(b)(3)

## SUPERSEDING INFORMATION

The United States Attorney's Office charges:

### COUNTS ONE
**(Conspiracy to Commit Bank Fraud)**

AUG 6 2024 PM1:42
FILED - USDC - FLMD - TPA

**A.    Introduction**

At all times material to this Information:

1.    Defendant Tyler Jacob, (hereinafter "JACOB") was a resident of the Middle District of Florida.

2.    Co-scheme participants I.J., J.L., B.H.,V.F., T.P., A.L., D.C, E.L., J.T., K.I., and N.H. were all residents of the Middle District of Florida.

3.    Banks 1, 2, 3, 4, 5 and 6 are financial institution with deposits insured by the Federal Deposit Insurance Corporation. Banks 1, 2, 3, 4, 5, and 6 maintain branch offices in the Middle District of Florida.

4.     Credit Unions 1 and 2 were federally chartered credit unions with branches located in the Middle District of Florida and elsewhere. Credit Union 1 and 2 are financial institutions, and its accounts and deposits were insured by the National Credit Union Association Share Insurance Fund. Credit Unions 1 and 2 maintained branches and Automatic Teller Machines ("ATMs") in the Middle District of Florida and elsewhere.

5.     Company 1 was a business located in Florida that maintained a corporate bank account ending in x2857 with Bank 1.

6.     P.P.G. is an individual who resides in Wyoming that maintained a bank account ending in x3580 with Bank 2.

7.     Company 3 was a business located in Florida that maintained a corporate bank account ending in x5187 with Bank 3.

8.     Company 4 was a business located in Florida that maintained a corporate bank account ending in x3513 with Bank 1.

9.     Company 5 was a business located in Florida that maintained a corporate bank account ending in x1348 with Bank 2.

10.     Company 6 was a business located in New York that maintained a corporate bank account ending in x0956 with Bank 5.

11.     Company 7 was a business located in Florida that maintained a corporate bank account ending in x5907 with Bank 4.

12.     Company 8 was a business located in Florida that maintained a corporate bank account ending in x3919 with Bank 6.

2

13. Company 9 was a business located in Florida that maintained a corporate bank account ending in x9153 with Bank 7.

14. Company 10 was a business located in Florida that maintained a corporate bank account ending in x3580 with Bank 8.

15. Company 11 was a business located in Florida that maintained a corporate bank account ending in x6897 with Bank 9.

16. Company 12 was a business located in Florida that maintained a corporate bank account ending in x6683 with Bank 10.

17. Company 13 was a business located in Florida that maintained a corporate bank account ending in x9925 with Credit Union 2.

18. A "means of identification," was any name or number that could be used, alone or in conjunction with any other information, to identify a specific individual, including any name, social security number, date of birth, official State or government issued driver's license or identification number, any unique electronic identification number, address or routing code, or any access device such as card, account number, personal identification number, or other means of account access that could be used alone on in conjunction with another access device, to obtain money, goods, services, or other things of value, or could be used to initiate a transfer of funds.

19. A credit card or debit card was an "access device." A credit card was a thin plastic card, usually 3-1/8 inches by 2-1/8 inches that contained identification information and authorized the person named on the card to make charges for which

3

he or she was billed periodically by the card issuer. A debit card looked like and generally contained the same information as a credit card, but immediately withdrew the money from the card holder's affiliated bank account.

### B.     The Conspiracy

20.     From an unknown date, but at least as early as in or around October 2021, and continuing through in or about October 2023, in the Middle District of Florida, and elsewhere, the defendant,

TYLER JACOB,

did willfully and knowingly combine, conspire, confederate and agree with co-conspirators I.J., J.L., B.H., V.F., T.P., A.L., D.C, E.L., J.T., K.I., N.H. and with others, both known and unknown to the Grand Jury, to knowingly, and with intent to defraud, execute, and attempt to execute, a conspiracy to defraud financial institutions, and to obtain monies, funds, credits, assets, and other property owned by, and under the custody and control of, one or more financial institutions, by means of materially false and fraudulent pretenses, representations, promises, and omissions relating to a material fact, in violation of 18 U.S.C. § 1344.

### C.     Manner and Means of the Scheme and Artifice

21.     The manner and means by which JACOB and the conspirators achieved the objects of the conspiracy included, among others, the following:

a.     It was a part of the conspiracy that JACOB would and did prepare and submit, and cause to be prepared and submitted, fraudulent checks, that

4

included materially false and fraudulent representations and pretenses, without lawful authority.

b.    It was further part of the conspiracy that JACOB would and did solicit, and cause to be solicited, and obtain electronic communications and otherwise exchange personal identifying information ("PII") of other persons.

c.    It was further part of the conspiracy that JACOB would and did direct others to provide him debit card, bank account number, PIN, and online banking information.

d.    It was further part of the conspiracy that JACOB would and did recruit co-conspirators via social media and text messages to participate in the conspiracy in exchange for a share of the proceeds.

e.    It was further part of the conspiracy that JACOB would and did obtain and use debit cards, PIN numbers, online bank accounts and other account information from co-scheme participants.

f.    It was further part of the conspiracy that JACOB and others would and did fraudulently deposit counterfeit checks throughout various bank accounts in the Middle District of Florida.

g.    It was further part of the conspiracy that JACOB would and did pay a portion of the fraudulent check amount to his co-conspirators and would use, and attempt to use, the currency obtained from the fraudulent checks, and to transfer funds to be used for his own personal enrichment, and to purchase goods and services.

5

h.    It was further part of the conspiracy that JACOB would and did perform acts and make statements to misrepresent, hide, conceal, destroy and cause to be misrepresented, hidden, and concealed, the purpose and objects of the conspiracy and the acts committed in furtherance thereof.

### D.    Overt Acts

22.    In furtherance of the conspiracy, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a. Between on or about October 22, 2021, and December 16, 2021, JACOB and a co-conspirator sent and received SnapChat communications in which they shared a plan to deposit and withdraw funds from a fraudulent check deposited into an account with Bank 2.

b. On or about October 29, 2021, JACOB and co-conspirators deposited a fraudulent check into a business account with Bank 2.

c. Between on or about April 5, 2022, and April 7, 2022, JACOB and a co-conspirator sent and received SnapChat communications in which they shared PII of another individual and a plan to deposit and withdraw funds from a fraudulent check deposited into an account with Bank 1.

d. On or about April 5, 2023, JACOB and co-conspirators deposited fraudulent checks into a business account with Bank 1.

e. Between on or about March 10, 2022, and March 29, 2022, JACOB and a co-conspirator sent and received SnapChat communications in which they

6

discussed a plan to deposit and withdraw funds from a fraudulent check deposited into an account with Bank 2.

27.     On or about April 5, 2022, JACOB and a co-conspirator deposited a fraudulent check into a business account with Bank 2.

28.     Between on or about May 15, 2022, and April 20, 2022, JACOB and a co-conspirator sent and received SnapChat communications in which they shared PII of another individual and a plan to deposit and withdraw funds from fraudulent checks deposited into an account with Bank 5.

29.     On or about May 19, 2022, JACOB and a co-conspirator deposited a fraudulent check into a business account with Bank 5.

30.     On or about May 16, 2022, JACOB and his co-conspirators utilized the PII of a real person to deposit a fraudulent check into a checking account with Bank 4.

31.     Between May 16, 2022, and May 31, 2022, JACOB and his co-conspirators withdrew money from that fraudulent check from a checking account with Bank 4.

32.     Between on or about February 8, 2023, and April 19, 2023, JACOB and a co-conspirator sent and received SnapChat communications in which they shared PII of another individual and a plan to deposit and withdraw funds from a fraudulent check deposited into an account with Bank 2.

33.     On or about February 27, 2023, and February 28, 2023, JACOB and co-conspirators deposited fraudulent checks into a business account with Bank 3.

7

34. On or about March 31, 2023, JACOB and co-conspirators deposited a fraudulent check into a business account with Bank 1.

35. On or about April 4, 2023, JACOB and a co-conspirator sent and received text messages in which they shared a plan to withdraw the funds from the fraudulent check deposited into an account with Bank 1.

36. On or about July 6, 2023, JACOB and his co-conspirators deposited a fraudulent check into an account with Bank 6.

37. On or about October 10, 2023, JACOB and a co-conspirator deposited a fraudulent check into a business account with Credit Union 1.

38. On or about October 23, 2023, JACOB conducted an ATM withdrawn of the fraudulent funds that were deposited into an account with Credit Union 1.

All in violation of 18 U.S.C. § 1349.

## COUNTS TWO THROUGH SEVENTEEN
### (Bank Fraud)

### A.     Introduction

1. The allegations contained in Sections A of Count One of this information are realleged and incorporated by reference as if fully set forth herein.

### B.     The Scheme and Artifice

2. On or about the date set forth below in each count, in the Middle District of Florida, and elsewhere, the defendant,

TYLER JACOB,

knowingly and intentionally executed and attempted to execute the aforesaid scheme

and artifice, by depositing counterfeit, fictitious and altered checks into accounts maintained at various banks and credit unions and withdrawing funds from the same, in violation of 18 U.S.C. §§ 1344 and 2.

### C.   The Manner and Means of the Scheme and Artifice

3.   The allegations contained in Section C of Count One of this Information are realleged and incorporated by reference as if fully set forth herein.

### D.   Execution of the Scheme and Artifice

4.   From an unknown date, but at least as early as in or around October 2021, and continuing through in or about October 2023, in the Middle District of Florida, and elsewhere, the defendant,

TYLER JACOB,

knowingly and intentionally executed and attempted to execute the aforesaid scheme and artifice, by depositing and causing to be deposited counterfeit, fictitious and altered checks into accounts maintained at various banks and credit unions and withdrawing funds from the same, as set forth below:

9

| COUNT | DATE | DEPOSITED CHECK | BANK ACCOUNT | AMOUNT |
|---|---|---|---|---|
| TWO | 10/29/2021 | Check #3194 drawn on P.P.G.'s bank account ending in x3580 at Bank 2 payable to Account Holder J.L. | Account Holder J.L.'s Bank Account 2 ending in x5520 | $2,970.00 |
| THREE | 2/27/2023 | Check #001177 drawn on Company 3's bank account ending in x5187 at Bank 3 payable to Account Holder B.H. | Account Holder B.H.'s Bank Account 3 ending in x4963 | $2,326.50 |
| FOUR | 2/28/2023 | Check #001179 drawn on Company 3's bank account ending in x5187 at Bank 3 payable to Account Holder B.H. | Account Holder B.H.'s Bank Account 3 ending in x4963 | $7,412.33 |
| FIVE | 3/31/2023 | Check #8181 drawn on Company 1's bank account ending in x1738 at Bank 1 payable to Account Holder I.J. | Account Holder I.J.'s Bank Account 1 ending in x1415 | $28,800.00 |
| SIX | 04/04/2022 | Check #6023 drawn on Company 4's bank account ending in x3513 at Bank 1 payable to Account Holder M.M. | Account Holder M.M.'s Bank Account 1 ending in x4259 | $20,700.00 |

| COUNT | DATE | DEPOSITED CHECK | BANK ACCOUNT | AMOUNT |
|---|---|---|---|---|
| SEVEN | 04/05/2022 | Check #9794 drawn on Company 12's bank account ending in x6683 at Bank 10 payable to Account Holder J.T. | Account Holder J.T.'s Bank Account 2 ending in x2943 | $5,113.00 |
| EIGHT | 04/5/2023 | Check #6025 drawn on Company 4's bank account ending in x3513 at Bank 1 payable to Account Holder V.F. | Account Holder V.F.'s Bank Account 1 ending in x2887 | $7,500.00 |
| NINE | 04/6/2023 | Check #16290 drawn on Company 5's bank account ending in x1348 at Bank 4 payable to Account Holder V.F. | Account Holder V.F.'s Bank Account 4 ending in x4493 | $8,100.00 |
| TEN | 5/8/2023 | Cashier's Check #3444 drawn on Bank 1's Operational Funds payable to Account Holder A.L. | Account Holder A.L.'s Bank Account 1 ending in x1172 | $5,000.00 |
| ELEVEN | 5/9/2023 | Cashier's Check #3443 drawn on Bank 1's Operational Funds payable to Account Holder A.L. | Account Holder A.L.'s Bank Account 1 ending in x1172 | $5,000.00 |

11

| COUNT | DATE | DEPOSITED CHECK | BANK ACCOUNT | AMOUNT |
|---|---|---|---|---|
| TWELVE | 5/16/2022 | Check #1030 drawn on P.J.'s bank account ending in x1423 at Bank 11 payable to Account Holder N.H. | Account Holder N.H.'s Bank Account 4 ending in x6990 | $5,000.00 |
| THIRTEEN | 5/16/2023 | Check #3985 drawn on Company 8's bank account ending in x3919 at Bank 6 payable to Account Holder D.C. | Account Holder D.C.'s Credit Union 1 Account ending in x7845 | $4,864.88 |
| FOURTEEN | 5/18/2023 | Check #113915 drawn on Company 9's bank account ending in x9153 at Bank 7 payable to Account Holder D.C. | Account Holder D.C.'s Credit Union 1 Account ending in x7845 | $4,986.42 |
| FIFTEEEN | 5/19/2022 | Check #166 drawn on Company 6's bank account ending in x0956 at Bank 5 payable to Account Holder T.P. | Account Holder T.P.'s Bank Account 5 ending in x2006 | $8,000.00 |
| SIXTEEN | 5/25/2023 | Check #2331 drawn on Company 10's bank account ending in x3580 at Bank 8 payable to Account Holder D.C. | Account Holder D.C.'s Bank Account 4 ending in x3571 | $6,101.00 |
| SEVENTEEN | 5/31/2023 | Check #23857916 drawn on Company 11's bank account ending in x6897 at Bank 9 payable to Account Holder E.L. | Account Holder E.L.'s Bank Account 1 ending in x2371 | $6,800.13 |

12

All in violation of 18 U.S.C. §§ 1344 and 2.

## COUNT EIGHTEEN
### (Aggravated Identity Theft)

1.     The allegations contained in Sections A and C of Count One of this Information are realleged and incorporated by reference as if fully set forth herein.

2.     Between on or about May 2022 and June 2022, in the Middle District of Florida, and elsewhere, the defendant,

TYLER JACOB,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, the name, address, and check belonging to P.J., during and in relation to the felony offense of bank fraud, in violation of 18 U.S.C. § 1344, as charged in Count Twelve of this Information, knowing that such means of identification belonged to an actual person.

In violation of 18 U.S.C. §§ 1028A and 2.

## COUNT NINETEEN
### (Felon in Possession of Ammunition)

On or about January 23, 2024, in the Middle District of Florida, the defendant,

TYLER JACOB

knowing that he had previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, including the following offenses:

1. Fleeing to Elude a Law Enforcement Officer, on or about December 19, 2022, and

13

2. Leave the Scene of an Accident with Injury, on or about December 19, 2022.

did knowingly possess, in and affecting interstate commerce, ammunition, that is, approximately 25 rounds of Igman, 5.56-millimeter rifle ammunition.

In violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

## COUNT TWENTY
### (Destruction of Evidence)

On or about January 23, 2024, in the Middle District of Florida, and elsewhere, the defendant,

TYLER JACOB,

did knowingly alter, destroy, and mutilate records or tangible objects, with the intent to impede, obstruct and influence the investigation and proper administration of the execution of a search warrant, a matter that the defendant knew was within the jurisdiction of the Federal Bureau of Investigation, a department and agency of the United States,

in violation of 18 U.S.C. § 1519.

## COUNT TWENTY-ONE
### (Tampering with a Witness)

On or about January 25, 2024, in the Middle District of Florida, the defendant,

TYLER JACOB,

did knowingly attempt to intimate, threaten, corruptly persuade and engaged in misleading conduct towards M.M.T., with the intent to hinder, delay, and prevent

14

the communication to a law enforcement officer of information relating to the possible commission of a federal offense.

In violation of 18 U.S.C. § 1512(b)(3).

## FORFEITURE

1. The allegations contained in Counts One through Twenty-One of the Superseding Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 924(c), 981(a)(1)(C), and 982(a)(2)(A), and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1344, or conspiracy to violate section 1344 (18 U.S.C. § 1349), the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

3. Upon conviction of a violation of 18 U.S.C. § 922(g), the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), all firearms and ammunition involved in or used in the violation.

4. Upon conviction of a violation of 18 U.S.C. § 1512, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

5. The property to be forfeited includes, but is not limited to, assorted ammunition seized from the defendant's residence on or about January 23, 2024, which were involved or used in the offenses.

15

6.     If any of the property described above, as a result of any acts or omissions of the defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property, which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

ROGER B. HANDBERG
United States Attorney

By: _____
Diego F. Novaes
Assistant United States Attorney
Deputy Chief, Violent Crime and Racketeering Section

By: _____
James C. Preston Jr.
Assistant United States Attorney
Chief, Violent Crime and Racketeering Section

16