'AF Approval _TLK for SCN_    Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUG 6 2024 PM1:17
FILED - USDC - FLMD - TPA

UNITED STATES OF AMERICA

v.    CASE NO. 8:24-cr-114-MSS-SPF

TYLER DEON JACOB

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Tyler Jacob, and the attorney for the defendant, Bryanna Bynum, mutually agree as follows:

## A.    Particularized Terms

### 1.    Counts Pleading To

The defendant shall enter pleas of guilty to Counts One through Twenty-One of the Superseding Information.

Count One charges the defendant with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349.

Counts Two through Seventeen charge the defendant with Bank Fraud, and in violation of 18 U.S.C. § 1344 and 2.

Count Eighteen charges the defendant with Aggravated Identify Theft, in violation of 18 U.S.C. § 1028A. Count Nineteen charges the defendant with Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g).

Defendant's Initials _TJ_

Count Twenty charges the defendant with Destruction of Evidence, in violation of 18 U.S.C. § 1519.

Count Twenty One charges the defendant with Witness Tampering, in violation of 18 U.S.C. § 1512(b)(3).

2.    Minimum and Maximum Penalties

Count One through Seventeen carry a maximum sentence of 30 years imprisonment, a fine of up to $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.

Count Eighteen is punishable by a mandatory sentence of two years' of imprisonment to be served consecutive to any term of imprisonment, which must be consecutive to any other term of imprisonment imposed, fine of up to $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.

Count Nineteen carries a maximum sentence of 15 years, a fine of up to $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.

Count Twenty carries a maximum penalty of 20 years imprisonment, a a fine of up to $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.

Count Twenty-One carries a maximum penalty of 20 years' imprisonment, a fine of up to $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.

Defendant's Initials TJ                              2

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of **Count One, Conspiracy to Commit Bank Fraud** are:

<u>First</u>:    Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit bank fraud, as charged in the indictment; and

<u>Second</u>: The Defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of **Counts Two through Seventeen, Bank Fraud** are:

<u>First</u>:    the Defendant knowingly carried out or attempted to carry out a scheme to defraud financial institution, to obtain money, funds, credits, assets and other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;

<u>Second</u>:  the false or fraudulent pretenses, representations, or promises were material;

<u>Third</u>:   the Defendant intended to defraud the financial institution and

<u>Fourth</u>:  the financial institution was federally insured and federally chartered.

Defendant's Initials _____    3

The elements of **Count Eighteen, Aggravated Identify Theft** are:

First:   The defendant knowingly transferred, possessed, or used another person's means of identification or identification document;

Second:  The defendant did so without lawful authority; and

Third:   The defendant did so during and in relation to a qualifying predicate offense, that is bank fraud, as charged in Count Twelve of the indictment.

The elements of **Count Nineteen, Felon in Possession of Ammunition** are:

First:   The Defendant knowingly possessed ammunition in or affecting interstate commerce; and,

Second:  Before possessing the ammunition, the Defendant knew he had been convicted of a felony—a crime punishable by imprisonment for more than one year.

The elements of **Count Twenty, Destruction of Evidence** are:

First:   the defendant knowingly altered, destroyed, concealed, or falsified a record, document, or tangible object; and

Second:  the defendant acted with the intent to impede, obstruct, or influence an actual or contemplated investigation of a matter within the jurisdiction of any department or agency of the United States

The elements of **Count Twenty-One, Tampering with a Witness** are:

First:   the defendant knowingly intimidated, threatened, corruptly persuaded another person, or engaged in misleading conduct towards another person;

Second:  with the intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States,

Defendant's Initials __TJ__                    4

Third:    of information related to the commission or possible commission of a federal offense.

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution, if any, to the victims.

7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement,

Defendant's Initials ___        5

including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below

Defendant's Initials __TJ__                    6

a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.      Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.     Cooperation - Responsibilities of Parties

a.      The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant

Defendant's Initials __TJ__                         7

understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have

Defendant's Initials _TJ_                    8

heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials _TJ_                    9

11. <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 924(c), 981(a)(1)(C), and 982(a)(2)(A), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following: assorted ammunition seized from the defendant's residence on or about January 23, 2024, which were involved or used in the offenses.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event

Defendant's Initials _TJ_          10

the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax

Defendant's Initials _____

11

returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of

Defendant's Initials _TJ_                    12

responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

12.   Abandonment of Property - Firearms and Ammunition

The United States of America and defendant hereby agree that any firearm and/or ammunition as defined in 18 U.S.C. § 921, seized from defendant and currently in the custody and/or control of the Federal Bureau of Investigations, including assorted ammunition seized from the defendant's residence on or about January 23, 2024, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. § 924(d) and/or that the firearms and ammunition constitute evidence, contraband, or fruits of the crime to which he has pled guilty. As such, defendant hereby relinquishes all claim, title and interest he has in the firearms and ammunition to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Bureau of Alcohol, Tobacco and Firearms, or other appropriate agency, to cause the firearms and/or ammunition described above to be destroyed forthwith

Defendant's Initials _____        13

without further obligation or duty whatsoever owing to defendant or any other person.

## B.   Standard Terms and Conditions

### 1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment of $100.00 pursuant to 18 U.S.C. § 3013.

To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $2,100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

Defendant's Initials _____                    14

The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

4.   Financial Disclosures

Pursuant to 18, U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and

Defendant's Initials ___TJ___                    15

disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

5.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and

Defendant's Initials ⊥ ⊥                    16

acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

6.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

Defendant's Initials ____    17

the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

8.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

9.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's

Defendant's Initials __T J__                    18

undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

   10.   <u>Factual Basis</u>

        Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials ___TJ___            19

## FACTS

a.   **Background**

On or about June 23, 2022, Tyler Jacob ("Jacob") was arrested by the Polk County Sheriff's Office after fleeing from a traffic stop. Detectives examined the evidence seized from his vehicle, which included numerous fraudulent checks and checks that had been returned as altered and fictitious documents by various banks. Other paperwork and electronic devices were also located in the vehicle. JACOB was also in possession of personal identification information ("PII") that had been handwritten on notebook paper. The PII included deceased persons and individuals who were mentally incompetent, either by old age or mental defect, and who resided in assisted living facilities.

An investigation into the personal and business checks in the possession of JACOB identified checks that listed the names of hundreds of businesses and victims (collectively the "PII Victims"). Each of the PII victims were contacted by detectives, and the PII Victims reported various instances of fraudulent activity on their checking accounts.

In JACOB's possession at the time of his arrest, detectives also identified 27 bank debit cards in the names of PII Victims. Records from the respective financial institutions revealed that the fraudulent checks found in JACOB's vehicle had been deposited in the same accounts associated with nearly all of the 27 bank debit card accounts. Each of the 27 PII Victims whose names

Defendant's Initials __TJ__          20

appeared on the bank debit cards in JACOB's possession were identified by detectives as associates and co-conspirators of JACOBS.

Detectives executed a search warrant for the black Lenovo Chromebook laptop and green Apple iPhone found in JACOB's vehicle. In those devices, they identified check writing software, fictitious checks and SnapChat content indicating JACOB was communicating with numerous individuals who were providing him with personal identification information, banking information (passwords and account usernames) and related data. In addition, a review of the green Apple iPhone's internet browsing history identified that the website "Brian's Club" was visited, an internet site used to buy and sell the financial and the PII of victims of identity theft and fraud. JACOB solicited and received PII and financial information using these SnapChat accounts, negotiated payment of illegally gotten money with co-conspirators, and coordinated operations in an ongoing financial racketeering operation designed to defraud individuals, financial institutions, and businesses.

b.    **Summary of Investigation, Counts 1 through 18**

Based on the results of the items found in his car, phone, computer, and person, the FBI launched an investigation into Tyler Jacob. In sum, the investigation revealed that from an unknown date, but at least as early as October 2021, and continuing through in or about October 2023, in the Middle District of Florida, and elsewhere, Jacob, and others, knowingly and intentionally devised a scheme to defraud financial instructions, including Banks 1, 2, 3, 4 and 5, as well as Credit

Defendant's Initials ___TJ___                    21

Unions 1 and 2, and others, my means of materially false and fraudulent pretenses, representations and promises.

The conspiracy took many forms. First, Jacob obtained, altered, and created fictitious checks for the purpose of obtaining proceeds from those checks. The amount on the checks ranged from between approximately $10,000 to as much as $100,000. In order to identify businesses to defraud, Jacob identified bank account information, stole checks from industrial buildings, and called banks to obtain information. Second, Jacob recruited and enlisted a network of individuals to help him deposit those checks at various banks, instructing them on how to successfully deposit and withdraw funds and avoid detection by financial institutions. Those checks were deposited at various financial institutions, as depicted in the chart on pages 9-11 of the Superseding Information. Third, Jacob, utilizing text messages and social media, sought PII, including bank account information that belonged to others so that the fraudulent checks could be deposited in their accounts, and the money could be withdrawn or wired from the bank account prior to detection.

Jacob later paid his conspirators a cut of the fraudulent amount they obtained. The conspiracy operated throughout the Middle District of Florida, including Orlando, Winter Haven, Lakeland, Bartow, Tampa, and Miami. During the course of this fraudulent scheme, Jacob and his co-conspirators deposited approximately $50,000 a week in fraudulent checks, approximately $10,000 of which they successfully obtained weekly prior to detection by financial institutions.

Defendant's Initials __I J__          22

Jacob agrees that the conspiracy's fraudulent activities resulted in an actual loss of at least $150,000 and intended loss of at least $550,000.

On various occasions, Jacob and his co-conspirators knowingly transferred, possessed and used means of identification of other persons, including the name, address and check belonging to a real person, as charged in Count Twelve of the Indictment, knowing that such means of identification belonged to an actual person.

c.    **Search Warrant at Jacob's Residence, Counts 19 and 20**

On or about January 23, 2024, the FBI executed a search warrant at JACOB's residence located at 1920 East Edgewood Drive, Apartment G6, Lakeland, Florida 33803. Post-*Miranda*, the FBI and PCSO conducted a recorded interview of JACOB who admitted to participating in fraud by knowingly paying other individuals for creating or altering fraudulent checks and depositing those checks in the accounts of PII Victims.

Consistent with the fraud JACOB was committing, inside the residence, law-enforcement officers found checkbooks and financial documents in the names of PII Victims, three printers, a scanner, a shredding machine, and an ink cartridge. Moreover, JACOB refused to surrender from the residence for approximately 30 minutes after law enforcement arrived. During the search of the residence, investigators observed shredded papers on both floors of the residence and a shredding machine that appeared to be full and jammed at the opening of the shredding mechanism. Additionally, law enforcement recovered documents,

Defendant's Initials _J S_                    23

including a checkbox, inside of a washing machine that was running when law enforcement entered the residence.

Investigators conducted an interview of JACOB's girlfriend, who stated she lived at the residence with only JACOB, his minor child, and her minor child. Inside the residence, agents located approximately 25 rounds of .556 rifle ammunition inside a child's jacket pocket located in a child's bedroom. Jacob is a convicted felon. As such, he does not have the right to own or possess firearms. The .556 rifle ammunition were manufactured outside of the state of Florida.

### d.   Recorded Jail Calls, Count 21

Agents reviewed telephone calls that JACOB made while incarcerated at the Polk County Central Jail. Less than 48 hours after the execution of the search warrant, on or about January 25, 2024, at approximately 8:52 a.m., JACOB called telephone number ending in 0033, which was used by his ex-girlfriend, M.M. During the conversation, JACOB stated, "At this time [M.M.], I really need you to help me." Additionally, JACOB stated, "They went and they found 25 rounds of .556 or some shit like that."

On or about January 25, 2024, at approximately 9:14 a.m., JACOB called telephone number 0033 again and spoke with M.M. During the conversation, JACOB stated, "I need the ammunition gone [M.M.]." Additionally, JACOB stated, "Even if they ask you questions and shit...all you gotta say you been there, you done came." Additionally, JACOB stated, "Just say that I didn't know they was there... Just make sure that they know that you left it there when you stayed the night at my

Defendant's Initials ⎯⎯⎯                    24

house." Here, JACOB was trying to corruptly persuade M.M. to tell law enforcement that the 25 rounds of .556 ammunition found during the search of JACOB's residence was owned by M.M. instead of him.

The above is merely a brief summary of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

11.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials TJ                    25

12.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 6th day of __August__, 2024.

ROGER B. HANDBERG
United States Attorney

_____
Tyler Deon Jacob
Defendant

_____
Diego F. Novaes
Assistant United States Attorney
Deputy Chief, Violent Crimes and
Racketeering Section

_____
Bryanna Bynum, Esq.
Attorney for Defendant

_____
James C. Preston, Jr.
Assistant United States Attorney
Chief, Violent Crimes and Racketeering
Section

26